IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR 114-078 |
| | ) | |
| KENNETH GARRETT | ) | |

**O R D E R**

On July 9, 2014, a federal grand jury indicted Defendant Kenneth Garrett for possession of access-device making equipment in violation of 18 U.S.C. § 1029(a)(4), and conspiracy in violation of 18 U.S.C. §§ 371, 1029(b)(2). (See doc. no. 1.) Because of Defendant's criminal history and the nature of the indictment allegations, the Court questioned Defendant during his initial appearance and arraignment regarding his employment and access to sensitive personal information. (Court's recording system, *For The Record*, ("FTR"), 2:37:18 - 59:41.)

Under oath, Defendant testified that he owned Empire Incorporated ("Empire") along with his fiancée, Ms. Allegro Worley, and that Empire contracts with Arise Virtual Solutions ("Arise") to handle inbound service calls from AT&T customers. (Id. at 2:44:29-59:31.) Defendant testified that Empire has three employees, and that "I supervise the team of customer service agents that we've hired." (Id.) Defendant explained that "we pretty much do troubleshooting . . . any type of service troubleshoot," and that "we don't take any payments, or anything like that, so we don't have any financial information on hand." (Id.) The only exception, according to Defendant, was that Empire employees have access to AT&T customers' names, addresses, and the last four digits of their social security numbers. (Id.)

The Government did not did not move for detention and recommended a $40,000.00

bond. (FTR 2:35:00 - 37:18.) Based on Defendant's sworn testimony, the Court determined that detention was unnecessary and set bond at $40,000.00, secured by 20% cash. (Doc. no. 66-70.) That day, Ms. Worley posted the cash, and the Court released Defendant subject to the standard conditions of release and one special condition that Defendant "shall not maintain any position of employment or volunteer work in which he has access to sensitive personal information of any person, including without limitation information such as birth dates, social security numbers, driver's license numbers, account numbers, user identification, passwords, credit cards, gift cards, and debit cards." (See doc. nos. 67-70.)

After setting conditions of bond, the Court ordered Defendant to produce documents to verify his testimony. (Id. at 2:44:29-2:59:31.) In compliance with the Court's request, defense counsel submitted on October 31, 2014 a cover letter, an affidavit from Ms. Worley, and a contract between The Boss Company and Arise. (See Hearing Ex. 6.) The information in these materials differs dramatically from Defendant's testimony. The cover letter and affidavit state that Defendant is employed by The Boss Company, not Empire, and that Ms. Worley is the sole owner of The Boss Company. (Id.) The letter and affidavit also explain that The Boss Company, not Empire, has a contract with Arise to handle inbound calls from AT&T customers. (Id.) Third, the contract provides that The Boss Company takes inbound calls regarding a variety of topics in addition to troubleshooting, such as payment arrangements that require the operator to access highly sensitive personal information. (Id.)

Because of these inconsistencies, the Court issued subpoenas *duces tecum* to Arise and Ms. Worley for a hearing on November 6, 2014. (Doc. nos. 74-75.) The hearing testimony and exhibits confirm beyond peradventure that Defendant lied on multiple occasions while under oath during his initial appearance. Testifying on behalf of Arise was Lisa Carstarphen, its Senior

Vice President and General Counsel. She testified that Arise has never had a relationship or any dealings with Enterprise or Defendant. (FTR 8:58:45-59:31.) Instead, Arise contracted with The Boss Company to handle inbound customer service calls from AT&T customers, and the sole owner of The Boss Company is Ms. Worley. (Id. at 9:04:00-4:40.)

Ms. Carstarphen produced two service contracts between Arise and The Boss Company, the relevant terms and conditions of which are identical. (See Hearing Exs. 3, 4; see also Hearing Ex. 2.) Ms. Carstarphen confirmed that Ms. Worley is the only person identified in the contracts as a "Designated CSP," meaning that Ms. Worley is the only person authorized by Arise to handle customer service calls on behalf of The Boss Company because she has successfully completed Arise's criminal background check and formal training. (See id.; FTR 8:59:31-9:03:35.) Defendant is not a Designated CSP, has not initiated the background check and training, and is not authorized to participate in the handling of AT&T customer service calls. (See id.; doc. nos. 2-3.)

Ms. Carstarphen also testified that The Boss Company does not merely handle device troubleshooting calls, but also handles calls regarding billing inquiries, customer service inquiries, payment arrangements, discount inquiries, updating account information, changing rate plans, and ordering new devices. (FTR 9:05:30-7:05.) The Boss Company thus had access to a trove of sensitive personal information far beyond names, addresses, and last four digits of social security numbers, including AT&T account numbers, credit and debit card account numbers, driver's license numbers, pin numbers, mothers' maiden names, and answers to security questions or other personal data that could allow access to personal accounts. (Id. at 9:08:35-9:13:10.)

Ms. Allegro's testimony did not differ materially from Ms. Carstarphen's with respect to

The Boss Company's scope of services or access to sensitive personal information. (Id. at 9:45:25-53:02.) As to Defendant, Ms. Allegro testified that he had no involvement in the handling of customer service calls and instead merely managed her business without compensation. (Id. at 9:40:00-45:00.) For example, Defendant made sure that Ms. Allegro completed all training required by Arise. (Id. at 9:42:00-43:05.) Defendant himself contradicted these assertions during his initial appearance when he testified that he directly supervised three employees who handle AT&T customer service calls.

As a result of the foregoing, the Court finds that Defendant made multiple, material misrepresentations under oath in order to obtain release on bond. In consideration of Defendant's perjury, his two prior felony fraud conviction, and his suspicious, unauthorized involvement in the handling of AT&T customer calls, the Court finds (1) by a preponderance of the evidence, that no condition or combination of conditions will reasonably assure the appearance of Defendant as required, and (2) by clear and convincing evidence, that no condition or combination of conditions will reasonably assure the safety of other persons and the community.

The Court hereby **GRANTS** the Government's motion for detention (id. at 8:50:30-51:00), **REVOKES** Defendant's bond, and **ORDERS** Defendant committed to the custody of the Attorney General or his designated representative for confinement in a jail or detention facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. Defendant shall be afforded a reasonable opportunity for private consultations with defense counsel. On order of a court of the United States, the person in charge of the jail or detention facility shall deliver Defendant to the United States Marshal for the purpose of appearing at court proceedings.

The Court also **GRANTS** Defendant's motion to return the cash security to Ms. Worley and exonerate the appearance bond. (Doc. no. 77.) Accordingly, the Court **ORDERS** the Clerk of Court to **RETURN** the $8,000.00 posted by Ms. Worley plus any accrued interest, **SETS ASIDE** the remainder of the $40,000.00 bond, and **EXONERATES** the Surety's appearance bond.

SO ORDERED this 17th day of November, 2014, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA